**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| ELIZABETH FARIAS, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 15 C 11515 | |
| v. | ) | | |
| | ) | Judge Sara L. Ellis | |
| GREAT LAKES CREDIT UNION, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**OPINION AND ORDER**

After Defendant Great Lakes Credit Union ("GLCU") terminated Plaintiff Elizabeth

Farias from her job as a loan sales specialist, Farias filed suit against GLCU for violation of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* GLCU moves for

summary judgment. Because Farias has failed to demonstrate that GLCU terminated her because

of her age, the Court grants GLCU's motion for summary judgment.

**BACKGROUND**[1]

GLCU is a state chartered not-for-profit credit union offering financial products to its

members. Credit union members remain members for life, meaning that GLCU places a

premium on maintaining member relationships.

In December 1998, GLCU hired Farias as a data entry clerk. From 2002 to 2015, Farias

served as a loan sales specialist at GLCU. In this role, she processed loan applications, pulled

credit reports, quoted interest rates and loan terms, answered phones, and forwarded documents

to GLCU members. Farias acknowledges that, in her role, it was important to ensure that loan

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts and Farias'
response. The Court has considered GLCU's objections to Farias' additional facts and supporting
exhibits and included in this background section only those portions of the statements and responses that
are appropriately presented, supported, and relevant to resolution of the pending motion for summary
judgment. All facts are taken in the light most favorable to Farias, the non-movant.

applications contained accurate information. Farias had the highest annual sales volume in her department in 2010, 2011, 2013, and 2014. In 2015, she increased her sales goal volume by $200,000 over the previous year.

During her time as a loan sales specialist, Farias had several supervisors, all of whom counseled her on work performance issues. Between December 5, 2003 and August 31, 2013, Farias reported to Lisa Anderson. On April 24, 2013, Anderson conducted a counseling meeting with Farias because Farias had processed an auto loan with an incorrect interest rate and had not set up automatic payments for a member. From September 1, 2013 to December 2, 2014, Farias reported to Sarah Zaworski, the daughter of GLCU's CEO and president. When Zaworski became Farias' supervisor, Farias, at 52 years of age, was the oldest employee in her department. Farias claims Zaworski told her she made the most money in 2014 but admits that she did so in a positive way. She also admits that she made more money because she had been in the department longer than any other GLCU employee.

On June 18, 2014, Zaworski had a counseling meeting with Farias to address performance issues that arose on February 28 and May 24, 2014. As documented, the complaints included, among other things, Farias telling a member she would apply a promotional interest rate but did not, causing the member to have to call back and speak to another representative to have it processed, Farias informing a member that documents were in the mail twice but never sending them out, and Farias failing to inform a member that an auto loan had been denied. Farias acknowledged these complaints. In July 2014, Farias received telephone etiquette and member service skills training from Lisa Hopton, a GLCU staff development manager. On August 4, 2014, Zaworski issued Farias a verbal warning for lack of communication and member complaints after she completed an online application without

2

obtaining the necessary documents and quoted an automatic payment discount without setting up automatic payment for the member. Additionally, Farias made a mistake in the processing of an auto loan, having a check for the loan cut at the wrong branch for the wrong amount, causing problems for the member and the staff at the GLCU branch where he went to retrieve his check.

From December 2, 2014 to June 5, 2015, Farias reported to Melissa Panganiban. On December 23, 2014, Farias received a written warning from Panganiban for rate errors and member complaints that occurred on November 10 and December 12, 2014. Specifically, on November 10, Farias quoted a vehicle loan rate of 2.24% when it should have been 3.99%. The member demanded GLCU honor the lower rate, causing GLCU to lose $888.17 in interest income. A similar error occurred on December 12, when Farias quoted an interest rate of 1.99% on a used vehicle when the proper interest rate was 3.74%, causing GLCU to pay the difference in interest rates, $284.89.

In January 2015, GLCU used secret shopping services provided by Support EXP to evaluate Farias' sales and service skills. To complete this exercise, Support EXP contacted random members and paid them $15 to $20 per secret shop to evaluate their sales and service experiences with GLCU employees. GLCU set 4.80 as the minimum sales and service rating it expected its employees to receive. In January 2015, when Support EXP conducted secret shopping of Farias, she received scores of 2.45 for service and 1.72 for sales. When this exercise was repeated in March 2015, she received a 4.15 rating for service and 2.67 for sales. Members commented that Farias did not ask them for their names, that she did not offer other products, and that she was slow to answer their phone calls, even allowing the phone to ring as much as eight times before answering.

Although Farias' secret shop scores did not meet GLCU's minimum expectations, Farias did receive some positive feedback, with notations made in feedback reports that she had busy months, had closed a high volume of loans despite being sick, was productive, had received some compliment emails, and was doing well in learning a new system. But the feedback was not all positive, with additional recommendations included about improving her customer service, accuracy, and communication skills.

Also during this time period, a member complained that Farias did not set up his account for automatic payments, causing him to receive delinquency notices. And on April 4, 2015, a member tried to pick up a loan check, but Farias had not prepared the check nor delivered it to the local branch for the member to pick up. Farias maintains that this member did not have an appointment and had not alerted her in advance. On April 8 and 11, 2015, Panganiban reviewed Farias' recorded calls, finding that Farias had difficulty instructing members about GLCU's procedures and loan approvals, did not understand member inquiries, and did not transfer members to the appropriate department.

Based on the secret shop results and additional member complaints, Panganiban gave Farias a final written warning with a three-day suspension on April 20, 2015. When she received this final warning, Farias knew she could be terminated if she made one more mistake. But Farias' problems continued. That same day, a member complained that he did not want to work with Farias or send loan paperwork to her because she "talked to him like she had a chip on her shoulder and was pushy." Doc. 43-5 at 18. Then, on April 22, a member complained that Farias quoted a vehicle loan rate of 2.74% when the rate should have been 4.49%, meaning GLCU had to reprocess the loan and honor the lower quoted rate, losing $943.60 in interest. This happened again on May 21, when Farias quoted a rate of 4.49% that should have been 7.74%, causing lost

4

interest of $3,879.22. On May 28, a member complained that Farias did not inform him of a $92

credit card balance transfer fee, which GLCU then waived. These errors in April and May 2015

caused GLCU a loss of $4,914.82. In light of the errors and because Farias had already been

given her final written warning, Panganiban recommended Farias' termination. Zaworski,

Panganiban's immediate supervisor, reviewed the termination decision, agreed with it, and

forwarded it to Janet Popelka, GLCU's assistant vice president of human resources and staff

development. Panganiban, along with Popelka, made the final decision to terminate Farias.

GLCU terminated Farias' employment on June 5, 2015.

At the time Farias was terminated, Zaworski was not her supervisor. Farias does not

have any specific information that GLCU fabricated or manufactured member complaints, but

she never saw any underlying documents to support the errors.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and

assess the proof as presented in depositions, answers to interrogatories, admissions, and

affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party

seeking summary judgment bears the initial burden of proving that no genuine issue of material

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the

evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue

for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a

bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v.*

*Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light

most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

The ADEA prohibits employers from discharging employees because they are forty years

old or older.  29 U.S.C. §§ 623(a), 631(a).  At summary judgment, "[Farias] must produce

evidence from which a jury could infer that her age 'was a but-for cause of [her] termination.'"

*Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014) (second alteration in original)

(quoting *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012), and citing *Gross v.*

*FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)).  Courts

previously spoke of proceeding under an indirect or direct method to establish discrimination,

but the Seventh Circuit has instructed that instead of using such tests, the Court should consider

the evidence "as a whole" to determine whether it "would permit a reasonable factfinder to

conclude that the plaintiff's [age] caused the discharge." *Ortiz v. Werner Enters., Inc.*, 834 F.3d

760, 765 (7th Cir. 2016).   The Court must determine "whether a reasonable factfinder could

'conclude that [Farias'] proscribed factor caused the discharge.'"  *Brown v. DS Servs. of Am.,*

*Inc.*, 246 F. Supp. 3d 1206, 1216 (N.D. Ill. 2017) (quoting *Ortiz*, 834 F.3d at 765).  This does not

mean, however, that the Court cannot consider the traditional burden-shifting test laid out in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973),

under which Farias attempts to demonstrate that she has the evidence needed to survive summary

judgment. *Ortiz*, 834 F.3d at 766 (noting that its decision does not overrule *McDonnell*

*Douglas*).  The Court therefore first considers the evidence through the *McDonnell Douglas*

framework and then turns to a cumulative review of the evidence to determine whether a

reasonable factfinder could determine that Farias' age caused her termination. *See David v. Bd. of Trs. of Cmty. College Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

## A. *McDonnell Douglas*

*McDonnell Douglas* allows a plaintiff to establish a *prima facie* case of discrimination and then rebut a defendant's stated non-discriminatory reason for the termination. *Id.* at 225. Farias may establish a *prima facie* case by presenting facts that "(1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." *Id.* (alteration in original) (quoting *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)). If Farias does this, then GLCU "must articulate a legitimate, nondiscriminatory reason" for firing Farias, "at which point the burden shifts back" to Farias to submit evidence showing GLCU's reason is pretextual. *Brown*, 246 F. Supp. 3d at 1217. The parties agree that Farias is part of the class protected by the ADEA and that her termination amounted to an adverse employment action. Farias' *prima facie* case then turns on whether she was meeting GLCU's legitimate expectations and whether she was treated less favorably than a similarly situated, younger employee.

Farias contends that she was performing her job adequately at the time of her termination, pointing to the fact that she had been a leading sales producer for several years before Zaworski became her supervisor, received positive reviews even two months before her termination, and also received complimentary emails. But despite any positive comments about her sales production, Farias cannot dispute that GLCU took issue with her job performance, as she received several written warnings beginning in 2013 before Zaworski became her supervisor and

7

continuing after Panganiban took over as her supervisor from Zaworski up to her termination in June 2015. This included a final warning and three-day suspension in April 2015, after which Farias continued to commit the same types of errors for which GLCU had written her up, leading GLCU to lose $4,914.82 in interest and fee income over that time period and receive additional complaints about Farias' interactions with GLCU members. This demonstrates that Farias was not meeting GLCU's legitimate expectations at the time of her termination, notwithstanding the positive feedback she had previously received or her past performance as a leading sales producer. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017) (finding that evidence presented demonstrated that the employer was clearly not satisfied with the plaintiff's job performance, notwithstanding the positive ratings he received on his year end performance reviews); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) ("[T]he fact that Luckie may have met expectations in the past is irrelevant; she must show that she was meeting expectations at the time of her termination."). Farias' contrary belief that she was performing her job adequately does not affect the analysis because the Court instead considers the employer's belief. *See Lauth*, 863 F.3d at 715–16 ("Lauth's belief that he was performing his job adequately is not relevant to the question of whether Covance believed it had a legitimate, non-discriminatory basis to terminate him."); *Mirocha v. Palos Cmty. Hosp.*, 240 F. Supp. 3d 822, 839 (N.D. Ill. 2017) (plaintiff could not create an issue of fact by claiming he was performing adequately or challenging his supervisors' assessment of his performance). Because the evidence demonstrates that Farias did not meet GLCU's legitimate expectations—repeatedly making errors and offering poor customer service that generated numerous customer complaints—the Court finds that she cannot meet this element of her *prima facie* case.

Additionally, Farias has not met the fourth prong of demonstrating a similarly situated employee. Farias argues that she can meet this prong by showing that GLCU replaced her with a "substantially younger" (meaning "ten years or so") similarly situated employee. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996); *Runyon v. Applied Extrusion Techs., Inc.*, 619 F.3d 735, 740 (7th Cir. 2010). But this standard only applies if she can show that she was meeting GLCU's legitimate employment expectations. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600–01 (7th Cir. 2010). Because Farias has not made that showing, she must present evidence that similarly situated, substantially younger employees were treated more favorably. *Id.* But she has not attempted to do so. And even applying the more relaxed standard, Farias would not satisfy the fourth prong. She vaguely refers to the fact that, after her termination, GLCU hired two people holding the same title she previously did. She does not identify these individuals by name, however, instead referring the Court to GLCU's answers to interrogatories attached to her response as an exhibit.[2] But her citation does not provide these individuals' names and GLCU only admitted that these individuals were "younger than" Farias, *see* Doc. 45-1 at 54, without any details to allow the Court to determine whether they qualify as "substantially younger" than Farias. *See Han v. Whole Foods Mkt. Grp., Inc.*, 44 F. Supp. 3d 769, 793 (N.D. Ill. 2014) (finding individual was not a proper comparator where plaintiff "has not pointed the court to any evidence of [his] age [which] alone prevents [plaintiff] from using [him] as a comparator"). Such conclusory assertions cannot create a material issue of fact. *See Boss v. Castro*, 816 F.3d 910, 919 (7th Cir.

---

[2] Farias directs the Court to GLCU's answer to paragraph 22 of the interrogatories attached as exhibit 4 to her response. Doc. 46 at 3. Exhibit 4 includes both GLCU's answer to interrogatories and answer to the amended complaint. Here, it appears that Farias intended for the Court to consider GLCU's answer to paragraph 22 of the amended complaint, in which GLCU admits that it hired two individuals who were younger than Farias after her termination. Doc. 45-1 at 54.

2016).  Therefore, Farias has failed to establish a *prima facie* case of discrimination under the *McDonnell Douglas* test.

B.      **Cumulative Assessment of the Evidence**

"A district court must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question whether 'a reasonable factfinder [could] conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge[.]'" *Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 665–66 (N.D. Ill. 2016) (alteration in original) (quoting *Ortiz*, 834 F.3d at 765).  The Court must also weigh whether Farias' evidence would cause "a reasonable factfinder to determine" that her age caused her termination.  *Aberman v. Bd. of Educ. of City of Chicago*, No. 12-cv-10181, 2017 WL 1036487, at *10, 13 (N.D. Ill. Mar. 17, 2017) (after addressing *McDonnell Douglas* test, cumulatively assessing "all the evidence" to determine if the plaintiff could prove a case of age and disability discrimination at trial).  "[A]ssessing cumulatively all the record evidence without the assistance of the *McDonnell Douglas* paradigm," *David*, 846 F.3d at 227, a reasonable jury could not conclude that GLCU terminated Farias because of her age.

Farias has not presented sufficient circumstantial evidence to show that her supervisors bore a discriminatory animus against her due to her age.  Farias alleges, without appropriate citation, that, at some point when Zaworski began supervising Farias, Zaworski commented on her age, asked about her plans to retire, and told her that she made the most money in the group.[3] Even taking these remarks into account, no reasonable jury could conclude that age was the determinative factor in Farias' termination.  *See Van Antwerp v. City of Peoria, Ill.*, 627 F.3d

---

[3] These allegations appear in Farias' amended complaint, are referenced by Farias or GLCU in their briefing without citation to the record, or are included in the Joint Statement of Material Facts as examples of Farias' claims without accompanying citations.  As such, they are not properly before the Court.  But because they are the only conceivable basis for a claim of age discrimination, the Court touches on them briefly here.

295, 297 (7th Cir. 2010) ("To establish a violation of the ADEA, an employee must show that age actually motivated the adverse employment action. Put differently, age must have played a role in the employer's decision-making process and had a determinative influence on the outcome." (citation omitted)). Zaworski did not make the decision to terminate Farias, Farias could not identify when Zaworski made these stray comments, and Farias even acknowledged that some of them, such as the one concerning making the most money, were made in an encouraging manner. *See Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207*, No. 13 C 1706, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 20, 2013) (dismissing case at pleading stage where only allegation of age discrimination was stray remark several years before disciplinary actions about plaintiff's age and when she was going to retire, finding these remarks were insufficient to suggest that age was the but for cause of plaintiff's discipline in light of other evidence of plaintiff's insubordinate behavior). Instead of demonstrating that Farias' termination resulted from discriminatory animus based on age, the evidence shows that GLCU terminated her because of repeated and uncorrected performance issues that arose while Farias was under the supervision of three different individuals, not just Zaworski.[4] Moreover, Panganiban and Popelka, not Zaworski, made the decision to terminate Farias. And Farias has not made any claims that Panganiban or Popelka held discriminatory animus toward her based on her age. She has not identified a concrete basis to call into question the performance issues identified by her supervisors, which provided a sufficient basis for her termination. Based on a detailed review of the record and considering the evidence as a whole, the Court concludes that a reasonable jury could not find that GLCU terminated Farias because of her age.

---

[4] Farias does argue in her response that Panganiban told Farias that she did not want to write Farias up but that Zaworski was making her do it, but this line of questioning related to a February 2015 interaction and does not undermine the parties' agreed statements of fact that Panganiban, not Zaworski, made the final decision to terminate Farias.

Because Farias' age discrimination claim fails under the *McDonnell Douglas* test, and she has not presented sufficient evidence to allow a reasonable factfinder to determine that she was terminated because of her age instead of for poor performance, her claim for ADEA discrimination cannot survive GLCU's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants GLCU's motion for summary judgment [42]. The Court enters judgment for GLCU on Farias' amended complaint and terminates this case.

Dated: February 9, 2018

SARA L. ELLIS
United States District Judge